UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANDRA GAINES, No. 515210,

                Petitioner,          Case Number 2:12-cv-13174
                                                  Honorable Victoria A. Roberts

v.

CATHERINE BAUMAN,

                Respondent.
_____/

OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) GRANTING PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner pled guilty in Wayne Circuit Court to assault with intent to cause great bodily harm less than murder, Mich. Comp. Laws § 750.84. He was sentenced to 10-to-15 years' imprisonment. The petition claims that his plea was involuntary, and Petitioner was denied the effective assistance of counsel when his attorney failed to discover that he was wrongfully charged as a third-time habitual offender.

The petition is denied; these claims are without merit. The Court also denies Petitioner a certificate of appealability and permission to proceed in forma pauperis.

I. Background

The charges against Petitioner arose from an assault on a woman who was walking in the woods near her house. As a result of the incident, Petitioner was originally charged with assault with intent to commit murder, a life offense.

At the preliminary examination, the victim, Laurie Buber, testified that she went for an afternoon walk in the woods near her residence with her roommate. Buber had a box cutter in her pocket for protection. While Buber walked along the trail, Petitioner jumped out and grabbed her by the throat and threw her to the ground. Petitioner got on top of her and began to squeeze her throat, telling her "it'll only take a minute." Buber thought he was going to kill her.

Buber testified that Petitioner then took the box cutter from her pocket and cut her throat and shoulder. She started to bleed profusely from her wounds. Petitioner then got Buber onto her stomach and tried to choke her with a cord. She managed to get her hand between the cord and her throat and stopped him from tightening it. Buber eventually blacked out.

Buber testified that when she awoke, she saw Petitioner straddling her roommate. Buber grabbed a stick and hit Petitioner in the arm. Petitioner hit Buber in the head with the stick. Eventually, Petitioner left the area. Buber then helped free her roommate's feet, which had been bound, and she called 9-1-1 on her cell phone.

Buber was taken to Sinai Grace Hospital in critical condition. She required surgery to repair the damage to her neck. Investigation revealed determined that Buber's roommate planned the ambush with Petitioner.

Prior to trial, Petitioner agreed to plead guilty to the lesser charge of assault with intent to cause great bodily harm less than murder. The plea bargain included a sentencing agreement of 12-to-20 years which would be reduced to 10-to-20 years if Petitioner cooperated in the prosecution of Buber's roommate.

At the sentencing hearing, the prosecutor stated that she had made an error, and that Petitioner was only a second-time habitual offender. Instead of doubling the usual 10-year statutory maximum sentence for a third-time offender, a second-time habitual offender charge only increased

the maximum term by fifty percent. See M.C.L. § 769.10-11. This lowered Petitioner's maximum term from 20 years to 15 years. The prosecutor agreed that Petitioner had cooperated in the prosecution of the roommate, and he was given a 10-year minimum term; i.e., Petitioner was sentenced to 10-to-15 years despite the fact that the agreement called for a 10 or 12-to-20 year sentence.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising what now form his habeas claims. In essence, Petitioner claimed that he was entitled to withdraw his plea because of the mistake regarding his habitual offender status. Petitioner explained that because he was only a second-time offender, the maximum possible sentence he ever could have received for the reduced charge was 15 years. And because under Michigan law a minimum sentence can be no greater than two-thirds the maximum sentence, the longest possible minimum term for the reduced charge was 10 years. See *People v Tanner*, 387 Mich. 683, 690 (1972). Petitioner reasoned that he could never have been given a 12-year minimum term for the reduced charge, and that he therefore did not receive any benefit for cooperating with the authorities–rendering the plea involuntary because he was not aware of the true value of the promises made to him.

The Michigan Court of Appeals denied the application for leave to appeal "for lack of merit in the grounds presented." *People v. Gaines*, No. 305863 (Mich. Ct. App. Nov. 2, 2011). Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court which raised the same claims. The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed." *People v. Gaines*, 491 Mich. 910 (2012) (table).

## II. Standard of Review

When a habeas claim has been adjudicated on the merits in state court, the AEDPA prohibits federal reviewing courts from granting the habeas petition unless the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established federal law when a state court arrives at a conclusion opposite of that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Unreasonable application of clearly established federal law occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. In terms of application, the Supreme Court has stated that, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011). In this way, the writ of habeas corpus operates as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).

## III. Discussion

As explained above, Petitioner claims that his plea bargain was involuntary because he never faced the possibility of receiving a 12-year minimum term for pleading guilty to the reduced charge of assault with intent to commit great bodily harm after it was discovered that he was only a second-

4

time habitual offender. He also claims that his counsel was ineffective for failing to discover the error prior to the plea. Petitioner further requests an evidentiary hearing on his ineffective assistance of counsel claim. His claims are without merit.

Under clearly established federal law, a guilty plea is valid if it is voluntarily and intelligently made. *Boykin v. Alabama*, 395 U.S. 238, 242 (1969). A plea is not voluntary and intelligent unless the defendant is aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution*, 927 F. 2d 256, 257 (6th Cir. 1991). It is only when the consensual character of a guilty plea is called into question, however, that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984). A plea entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (i.e. bribes). *Id*.

Petitioner correctly notes: there is at least a sense that the value of the promise made to him was misrepresented. Petitioner believed he was initially facing charges of assault with intent to commit murder as a third-time habitual offender. The prosecutor agreed to reduce the charge to assault with intent to commit great bodily harm–a 10-year felony–but retain the third-time habitual offender charge. Under Michigan law, the maximum sentence for an offense committed by a third-time habitual offender is doubled, in this case to 20 years. See M.C.L. § 769.11. As for the minimum term, the parties agreed that it would be set at 12 years, which could be reduced to 10 years if Petitioner cooperated in the prosecution of his accomplice. Thus, at the time of the plea agreement, Petitioner believed he would receive a sentence of 12-to-20 years, which would be

reduced to 10-to-20 years if he cooperated.

In fact, however, the prosecutor concluded at the sentencing hearing that Petitioner was only a second-time habitual felony offender. This had the beneficial effect of reducing the maximum term of Petitioner's sentence to 15 years. See M.C.L. § 769.10. But as Petitioner points out, it also meant that his minimum sentence could never have been more than 10 years, meaning that even if he had not cooperated with the prosecution of his accomplice, he could not have been sentenced to a 12-year minimum term. In this sense Petitioner was misled about the value of his cooperation -- he thought he faced a 12-year minimum sentence unless he cooperated; in fact, he faced no more than a 10-year minimum whether he cooperated or not.

Respondent counters by arguing that any misrepresentations did not render the plea involuntary because they actually benefitted Petitioner. That is, Petitioner was told that if he cooperated he would receive a 10-to-20 year sentence, but as a result of the misrepresentations, he ended up with a more favorable 10-to-15 year sentence after he cooperated.

Petitioner rejoins by arguing that Respondent's position ignores the value he placed on his cooperation with the prosecutor -- a two year reduction of his minimum term -- for which he received no real benefit.

Indeed, there are two reasonable ways to view the situation. On one hand, as argued by Petitioner, it appears that the parties placed the value of Petitioner's cooperation as a two-year reduction of his minimum sentence. This interpretation is supported by the plea transcript where the parties described Petitioner's cooperation as reducing his minimum term to 10 years. But the promise of a two-year reduction was illusory; a 12-year minimum term would have been invalid under State law.

On the other hand, it could reasonably appear that the parties placed the value of cooperation

with the prosecutor as Petitioner receiving a 10-year minimum term, which Petitioner in fact received.

Under the first view, Petitioner's plea arguably would be involuntary because he was not informed of the real value of the promises made to him, and there was an unfulfilled promise to reduce his minimum sentence by two years. Under the second view, the plea was voluntary because Petitioner received the minimum sentence he bargained for in exchange for his cooperation, and a substantially reduced maximum sentence.

The AEDPA dictates the outcome here. The Michigan Court of Appeals denied petitioner's application for leave to appeal in a form order "for lack of merit in the grounds presented." This decision is entitled to heightened deference under the AEDPA. See *Hardaway v. Robinson*, 655 F.3d 445, 447, 449 n. 1 (6th Cir. 2011). This is because "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 131 S. Ct. at 784 . In such situations, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*, at 786. In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

The argument that Petitioner's plea was voluntary because he got a better sentence than he bargained for gave the state courts a reasonable basis to reject his claim. One fair reading of the record reasonably supports the idea that the price for Petitioner's cooperation and plea was a 10-year

7

minimum sentence. A court could therefore reasonably find that Petitioner correctly understood the value of the plea agreement, notwithstanding his erroneous belief that if he failed to cooperate he would receive a 12-year minimum sentence. While a 12-year minimum sentence may not have been possible, the fact remains that Petitioner was originally charged with a life offense. According to Respondent, the sentencing guidelines for the original charge called for a minimum sentence between 14¼ and 29½ years, and Petitioner does not dispute this calculation. The value of the bargain was the elimination of the possibility of a minimum sentence in that range–or even a life sentence–for the certainty of a 10-year minimum sentence and cooperation. Though the perceived value of the cooperation aspect of the bargain might have been affected by the erroneous information, a court could find that the direct consequence of his plea -- a 10-year minimum sentence -- was accurately understood. The state court rejection of Petitioner's claim "was [not] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786.

With respect to Petitioner's ineffective assistance of counsel claim, the United States Supreme Court has set forth a two-part test for evaluating the claim of a habeas petitioner who challenges a guilty or no contest plea on the ground that he was denied the effective assistance of counsel. First, the Petitioner must establish that "'counsel's representation fell below an objective standard of reasonableness.'" *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Second, the Petitioner must demonstrate that counsel's performance resulted in prejudice, i.e., "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

This claim is less troubling. Petitioner has not shown a reasonable probability that he would

8

not have pleaded guilty had he been correctly informed that he was only a second-time felony offender. Had he been so informed, it is more likely, not less likely that he would have accepted the plea bargain. The corrected charge reduced his maximum sentence from 20 years to 15 years, and he still would have received, at worst, the 10-year minimum sentence. This argument is without merit.

Finally, Petitioner claims he is entitled to an evidentiary hearing on his ineffective assistance of counsel claim.

When a habeas claim has been adjudicated on the merits by a state court, as here, federal habeas review "is limited to the record . . . before the state court" at the time of its decision. *Cullen v. Pinholster*,   U.S.   , 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011). Any evidence produced in an evidentiary hearing in federal court would be irrelevant and have "no bearing on §2254(d)(1) review." *Id*., 131 S. Ct. at 1400.

Petitioner is not entitled to a hearing in this case.

## IV. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.

A certificate should issue if Petitioner demonstrates a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473 (2000). The Court finds that reasonable jurists would not debate whether the misinformation regarding Petitioner's habitual offender status rendered his plea involuntary, or that he was prejudiced by his counsel's failure to correct the error. Therefore, the Court denies Petitioner a certificate of appealability with respect to

that claim. The Court will, however, grant Petitioner permission to proceed on appeal in forma pauperis.

## V. Conclusion

The Court **DENIES** the petition for a writ of habeas corpus **WITH PREJUDICE**. The Court **DENIES** a certificate of appealability but **GRANTS** permission to proceed on appeal in forma pauperis.

**SO ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: November 26, 2013

The undersigned certifies that a copy of this document was served on the attorneys of record and Andra Gaines by electronic means or U.S. Mail on November 26, 2013.

S/Linda Vertriest
Deputy Clerk